## Charles S. Cook, Defendant in Error, v. Jacob O. Curry and Harlan B. Curry, Conservator, Plaintiffs in Error.

### Gen. No. 20,435.    (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed March 29, 1915.

### Statement of the Case.

Action by Charles S. Cook against Jacob O. Curry for $564 alleged to be due for rent on a written lease. February 5, 1914, Jacob O. Curry was adjudged by the Probate Court of Cook county to be a feeble-minded person, and Harlan B. Curry was duly appointed to be his conservator, "authorized and required to have the care of his person and estate." Harlan B. Curry duly qualified under the appointment and on February 11th appeared in the cause under an order of court that he should so appear and defend the cause as conservator.

The evidence shows that on May 11th Jacob O. Curry at Allston, Massachusetts, signed a document presented to him by a firm of renting agents at Allston consisting of George F. Taft and Norman S. Waite. The document was headed "Rental Application and Agreement." The essential parts of the face of the document, which was signed at the foot of said face, as follows:

"Signature of applicant, J. O. Curry, Lessee (Seal)

Accepted by, Taft & Waite, Agents for the Owners," are, after the date—

Name, Jacob O. Curry as Lessee.  *  *  *  Family consists of 4 adults, 2 children  *  *  *  Applied for —Suite 1—36 Linden St., Allston.  Owner, Charles S.

Cook, as Lessor.　Rent $564 per annum payable $47 monthly.　Rent to begin June 1, 1909.　＊　＊　＊
                    Rental Agreement.

In making the foregoing application I hereby agree that upon its acceptance by the owner (or Taft and Waite, Agents) I am to hold said premises for the time and upon the conditions specified upon the back hereof, the latter being hereby made a part of this agreement.''

The back of the paper was headed:

''Terms and Conditions of Rental Agreement.''

Beneath this heading, besides conditions usual in a lease of an apartment, were the following provisions:

''Lessee agrees to pay rent to Sept. 1, 1910.　In the event that Lessee desires to vacate premises at that date, written notice must be given to the Lessor on or before Aug. 1, 1910.　Failing so to do, lessee is holden for rent until Sept. 1, 1911.　If Lessee desires to vacate premises at last mentioned date, written notice must be given to Lessor on or before August 1, 1911.　Failing so to do, Lessee is holden for rent until thirty days notice is given as above outlined, to take effect on September 1, in any year, but this lease shall terminate in any event in twenty years from the date when rent commences.

The Lessor may terminate this agreement upon 30 days written notice, to take effect on September 1, in any year at or after Sept. 1, 1910, but without waiving any right of the Lessor to terminate for a breach of any of the other terms and conditions specified herein.''

The evidence further shows that after the execution of this document, Jacob O. Curry, whose family at the time consisted of himself, his wife, his son, Oakley Curry, his daughter, Elsie Curry, and a widowed daughter, Mrs. Blair, and her two children, moved into the premises.　He lived there with the family before described until April 6, 1911, when he, and his wife and daughter Elsie Curry left the premises and came to Chicago, bringing their household goods with them.

He left in the premises his son Oakley and his daughter Mrs. Blair with her children.

Jacob O. Curry when about to leave told Mr. Taft that business called him to Chicago and he and his wife were going there; that he might be gone one month and he might be gone six months, and that the rent in the meantime would be paid by his son, and if it was not, he (Jacob O. Curry) was perfectly good for it.

Jacob O. Curry did not return to the premises, but his son and Mrs. Blair and her children continued to occupy the apartments until September 1, 1913. Up to September 1, 1912, the rent was paid by the son or daughter. Monthly bills were sent each month to Jacob O. Curry, suite 1—36 Linden Street, Allston, and the son, Mr. Taft testified, "used to drop in occasionally and either say he was short or else he would pay." From September 1, 1912, to September 1, 1913, at which last mentioned date Oakley Curry and Mrs. Blair and family moved out, no rent was paid.

In answer to the question put to Mr. Taft: "Will you state the circumstances under which the occupation of the premises ceased on September 1, 1913, by Mr. Curry's children?" he answered, "They simply moved."

Jacob O. Curry never at any time gave a notice of his election to terminate the lease in accordance with its provisions, and no arrangement was made by the plaintiff or by any one for him with anybody but Jacob O. Curry regarding the tenancy in question.

To reverse a judgment for plaintiff for $564, defendants prosecute this writ of error.

JAMES L. CLARK, for plaintiffs in error.

ADAMS, CREWS, BOBB & WESCOTT, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

## Abstract of the Decision.

1. INSANE PERSONS, § 7*—*when order to conservator to appear and defend action against ward proper.* Where a conservator has been duly appointed by the Probate Court of Cook county to be the conservator of a person adjudged to be feeble-minded and "authorized and required to have the care of his person and estate" and has duly qualified under the appointment, an order of the court that he appear and defend as conservator, an action brought against his incompetent in the Municipal Court of Chicago before his appointment, is sufficient, even though it does not in terms make the conservator "a party defendant."

2. PRINCIPAL AND AGENT, § 189*—*when lease by agent ratified by owner.* Where the owner of the property allows one entering into a lease with the owner's agents, which the tenant signs, to take possession under the lease and recognizes his tenancy, there is a sufficient ratification of the agents' act, even though the lease is signed not by the owner, but in the name of the agents, followed by the words "agents for the owners."

3. FRAUDS, STATUTE OF, § 77*—*when signature of tenant sufficient.* To comply with the Statute of Frauds, it is not necessary that a lease be signed by both landlord and tenant, but the tenant's signature is sufficient.

4. LANDLORD AND TENANT, § 449*—*when liability of tenant continued.* A tenancy from month to month is not terminated by the departure of the tenant where members of his family left there by him continue to occupy the premises.

5. WITNESSES, § 116*—*when disqualification not applicable to plaintiff's agents in action against defendant as conservator.* Where an action for rent is brought against one who is thereafter adjudged feeble-minded and for whom a conservator appears and defends, the agents who negotiated the lease for plaintiff and who signed it as his agents are not incompetent as witnesses as being "directly interested."

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.